IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

DONNA K.[1]

                    Plaintiff,

          vs.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                    Defendant.

Case No. 3:20-CV-00286-JMK

**ORDER REMANDING FOR FURTHER
PROCEEDINGS**

## I.  INTRODUCTION

On or around January 14, 2019, Plaintiff Donna K. ("Plaintiff") filed claims

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

under Title II and Title XVI of the Social Security Act ("the Act"), alleging disability

beginning on December 15, 2017.[3]  After receiving an unfavorable decision from an

---

[1]  Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf.

[2]  On August 12, 2021, Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, was substituted for Andrew M. Saul, Commissioner of the Social Security Administration, pursuant to Federal Rule of Civil Procedure 25(d).  *See* Docket Annotation, August 12, 2021.

[3]  Administrative Record ("A.R.") 292–99.  The Court uses the term "disability benefits" to include both DIB and SSI.  Plaintiff brought for claims under Title II and Title XVI in this case. *See* Docket 1.  Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs.  *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R.

Administrative Law Judge ("ALJ"), Plaintiff exhausted all administrative remedies and filed a Complaint, on November 10, 2020, seeking relief from this Court.[4] Plaintiff's opening brief asks the Court to vacate the ALJ's decision and remand the case back to the Commissioner of Social Security (the "Commissioner") under 42 U.S.C. § 405(g), with instructions.[5] The Commissioner filed an Answer to the Complaint[6] and a response brief in opposition.[7] Plaintiff filed a reply brief.[8] This Court has jurisdiction to hear an appeal from a final decision of the Commissioner.[9]

For the reasons set forth below, Plaintiff's request for relief is **GRANTED,** the final decision of the Commissioner is **VACATED**, and this case is **REMANDED** to the Commissioner for further proceedings.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born May 10, 1966, and was 53 years old at the time of the ALJ's June 2, 2020, unfavorable decision.[10] She was 51 years old on December 15, 2017, the alleged disability onset date.[11] She has a high school education with some college courses completed and past work experience as a Certified Nurse Assistant ("CNA") and

---

§§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] *See* Docket 1.
[5] Docket 19 at 15.
[6] Docket 13.
[7] Docket 22.
[8] Docket 24.
[9] 42 U.S.C. § 405(g).
[10] A.R. 132.
[11] *Id.*

Administrative Assistant.[12]  On January 14, 2019, Plaintiff filed claims for SSI and DIB

under the Act, alleging that the following restricted her ability to work:  diabetes, high

blood pressure, sleep problems, vision problems, neuropathy, depression, and other mental

impairments.[13]  On September 6, 2019, the Social Security Administration ("SSA")

initially determined that Plaintiff was not disabled, denying her claims for SSI and DIB.[14]

On September 26, 2019, Plaintiff requested a hearing on her claims before an ALJ.[15]  She

appeared and testified by telephone at a hearing before ALJ Cecilia LaCara on May 13,

2020.[16]  Plaintiff was represented by counsel at the hearing.[17]  William Weiss, a vocational

expert ("VE"), and non-examining medical experts ("ME") Margaret Moore, a

psychologist, and Wayne Robert Kidder, a physician, also testified at the hearing.[18]

On June 2, 2020, the ALJ issued an unfavorable decision.[19]  On June 5, 2020,

Plaintiff filed a request for review to the Appeals Council.[20]  On September 16, 2020, the

Appeals Council denied the request for review, thereby making the ALJ's decision the final

decision of the Commissioner.[21]  On November 10, 2020, Plaintiff filed a Complaint

---

[12]  A.R. 62, 75–76 (According to the Vocational Expert, the Administrative Assistant position was considered a "sedentary job, [with a] SVP of 7, skilled, with a GED [requirement] of 5, 3, and 5[;]" while the CNA position had a "heavier SVP of 4, and [was considered] semiskilled, and [had] a GED [requirement] of 3, 2, and 2.").

[13]  A.R. 314, 321–22, 326.

[14]  A.R. 24, 157 (SSI), 163 (DIB).

[15]  A.R. 169–70.

[16]  A.R. 39–82.

[17]  A.R. 24.

[18]  A.R. 48–61 (medical expert testimony); A.R. 74–80 (vocational expert testimony). Within this Order, "the ME" refers to Dr. Kidder.

[19]  A.R. 21–38.

[20]  A.R. 15–20.

[21]  A.R. 1–6.

appealing the Commissioner's final decision to this Court.[22] Plaintiff is represented by counsel in this appeal.

## III. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[23] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[25] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[26] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[27] A reviewing court may consider only the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which she did not rely."[28] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination . . . or that, despite the legal error, the agency's path

---

[22] Docket 1.
[23] *Matney ex. rel Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[24] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[25] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).
[26] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).
[27] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).
[28] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[29]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[30]

## IV.  DETERMINING DISABILITY

The Act provides for the payment of disability insurance benefits to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[31]  In addition, SSI may be available to individuals who do not have insured status under the Act, but who are age 65 or older, blind, or disabled.[32]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.][33]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding

---

[29] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

[30] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996), (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3).  *See also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014).

[31] 42 U.S.C. § 423(a).

[32] 42 U.S.C. § 1381a.

[33] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Case 3:20-cv-00286-JMK   Document 25   Filed 03/28/22   Page 5 of 22

sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[34]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[35] A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability.[36] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[37] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[38] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[39] *The ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 15, 2017.*[40]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments.[41] A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education,

---

[34] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[37] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[38] *Tackett*, 180 F.3d at 1099.

[39] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[40] A.R. 27.

[41] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

or work experience.[42]   The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[43]   *The ALJ determined that Plaintiff had the following severe impairments:  insulin dependent diabetes mellitus, post-toe amputation, and peripheral neuropathy.[44]   The ALJ determined that Plaintiff's pneumonia; psoriasis; carpal tunnel syndrome; degenerative disc disease, spine; and GERD were non-severe impairments.[45]   The ALJ further determined that Plaintiff did not have any medically determinable mental impairments or, in the alternative, any mental disorders Plaintiff may have are non-severe, as Plaintiff did "not have more than minimal limitations in her ability to perform basic mental work activities."[46]*

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, Subpart P, Appendix 1, precluding substantial gainful activity.  If the impairment(s) is (are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.[47]   If not, the evaluation goes on to the fourth step.  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[48]*

---

[42]  20 C.F.R. §§ 404.1520(c), 416.920(c).

[43]  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[44]  A.R. 27.

[45]  *Id.*

[46]  *Id.* (noting that Plaintiff lacks a formal bipolar disorder diagnosis and the record's identification of a mood disorder is unsupported by testing or examinations).

[47]  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[48]  A.R. 28.

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five.[49] An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[50] *The ALJ determined that Plaintiff had the RFC to perform light work with the following exceptions:*

> [S]he can stand and/or walk for up to four hours in an eight hour workday; she can sit for up to six hours in an eight hour workday; she can never operate foot controls; she can occasionally climb ramps or stairs; she can occasionally balance and stoop; she can never climb ladders, ropes, or scaffolds; she can frequently kneel, crouch, and crawl; she can frequently bilaterally handle, finger, and feel with no repetitive manipulations; she must avoid moderate exposure to non-weather related extreme cold; she must avoid concentrated exposure to wetness, humidity, and excessive vibration; she must avoid all exposure to unprotected heights and hazardous machinery; and she is limited to occupations that require only frequent near acuity.[51]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[52] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined*

---

[49] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[50] *See* SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).
[51] A.R. 28 (italics added).
[52] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

*that Plaintiff was capable of performing her past relevant work as an administrative assistant, as generally performed.*[53]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[54] *The ALJ did not reach Step Five in the five-step sequential evaluation process.*[55]

The ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time from December 15, 2017, the alleged disability onset date, through June 2, 2022, the date of the ALJ's decision.[56]

## V. DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) failing to comply with the Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX"); (2) constructing an RFC that is internally inconsistent; (3) constructing an RFC that is unsupported by substantial evidence; and (4) failing to resolve "apparent conflicts" between the VE's testimony and job requirements listed in the Dictionary of Occupational Titles ("DOT").[57] As a result of those errors, Plaintiff argues that the ALJ

---

[53] A.R. 33.
[54] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[55] Because erosion of a claimant's occupational base only becomes relevant at step five, and the ALJ failed to conduct a Step 5 analysis, the Court does not address Plaintiff's arguments regarding "job erosion." Docket 19 at 10. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).
[56] A.R. 34.
[57] Docket 19 at 4, 7.

erred at step four of the sequential evaluation by finding that Plaintiff "could perform her past work as [an] administrative assistant[,] as generally performed in the DOT."[58]

Plaintiff requests that the Court vacate the ALJ's decision and remand the case back to the Commissioner under 42 U.S.C. § 405(g) with instructions to reevaluate the finding at step four of the sequential process.

## A. Lack of Compliance with HALLEX I-2-6-70(b)

As a preliminary matter, the Court acknowledges Plaintiff's complaint that, by taking the ME's testimony before that of Plaintiff at the administrative hearing, the ALJ violated agency policy set forth in HALLEX, an internal Social Security Administration policy manual.[59] According to Plaintiff, she was prejudiced by that violation because, had the ME been aware of her difficulties "grasping, holding, and turning" things, as she later testified, "there exists a reasonably [*sic*] probability that [she] would have been limited to only occasional [, rather than frequent,] handling and fingering."[60]

Plaintiff is correct that the ALJ failed to comply with HALLEX I-2-6-70(b), which provides that "[i]f the ME [is] not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record." Because the ME testified before Plaintiff, the ALJ was unable to summarize Plaintiff's potentially pertinent testimony for the ME, and thereby violated agency policy. While the ALJ clearly *did*

---

[58] Docket 24 at 9.
[59] Docket 19 at 7 (citing HALLEX I-2-6-70(b)).
[60] *Id.*

violate HALLEX, "the Ninth Circuit has plainly . . . taken the position that HALLEX does not . . . create judicially enforceable duties" upon ALJs or courts.[61]  The ALJ's failure to comply with HALLEX in this case thus is not a reversible error.

## B.    Internal Consistency of RFC

Plaintiff argues that the RFC is either ambiguous or internally inconsistent because it "contains confusing terms that are in conflict with each other."[62]  Specifically, Plaintiff takes issue with the ALJ's use of the terms "frequently" and "repetitive" in its conclusion that she "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except . . .  [that] she can *frequently* bilaterally handle, finger, and feel with no *repetitive* manipulations."[63]  According to Plaintiff, "the RFC completely precludes the hypothetical individual from any repetitive manipulation while simultaneously . . . allow[ing] the hypothetical individual to frequently handle, finger, and feel."[64]  In so doing, she argues, the "ALJ's assessment is at odds with itself and creates an internally inconsistent RFC."[65]  The Court disagrees.

Plaintiff's argument requires the Court to accept that allowing *frequent* manipulations is intrinsically at odds with prohibiting *repetitive* manipulations.  Yet, neither the authorities to which Plaintiff cites—namely, Social Security Ruling ("SSR")

---

[61]  *Lehman v. Saul*, No. 3:20-CV-0184-HRH, 2021 WL 1232670, at *10 (D. Alaska Apr. 1, 2021).  *See also Ronquillo v. Saul*, No. 1:19-CV-1665 JLT, 2021 WL 614637, at *4 (E.D. Cal. Feb. 17, 2021) ("[T]he Ninth Circuit determined failure to comply with HALLEX standards is not a reversible error because 'HALLEX is strictly an internal guidance tool'") (quoting *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000)).

[62]  Docket 19 at 5.

[63]  *Id.* at 5–6 (citing A.R. 28).

[64]  *Id.* at 6.

[65]  *Id.*

83-10[66] and *Gardner v. Astrue*, 257 F. App'x 28 (9th Cir. 2007)—nor the plain meanings of the terms, support such a conflict.[67]

Pursuant to SSR 83-10, for the purposes of assessing an individual's ability to perform "light work," *frequent* means "occurring from one-third to two-thirds of the time" over the course of an eight-hour workday.[68] While there is no SSR that defines *repetitive*, in *Gardner*, the Ninth Circuit provides the following helpful observation regarding the distinction between the two terms:

> "repetitively" in . . . [the social security context] appears to refer to a qualitative characteristic—i.e., how one uses his hands, or what type of motion is required—whereas . . . "frequently" seem[s] to describe a quantitative characteristic— i.e., how often one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner frequently, or it might require him to use his hands in a repetitive manner constantly.[69]

Pursuant to *Gardner*, this Court finds no internal inconsistency or ambiguity in the RFC's allowance of light work requiring "frequent[] bilateral[] handle, finger, and feel. . . [but] no repetitive manipulations."[70] The Court understands the RFC to limit, rather

---

[66] SSR 83-10, 1983 WL 31251 (S.S.A. January 1, 1983).

[67] *See* Docket 19 at 4–6.

[68] SSR 83-10, 1983 WL 31251, at *6 (S.S.A. January 1, 1983). The purpose of SSR 83-10 is to "address the issue of capability to do other work, and to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." *Id.* at *1. *See also* Program Operations Manual System for Social Security ("POMS"), DI 25001.001(A)(33) ("Use of th[e] term [frequently] in the SCO or RFC means that the activity or condition occurs one-third to two-thirds of an 8-hour workday.") *available at* https://secure.ssa.gov/poms.nsf/lnx/0425001001.

[69] *Gardner*, 257 F. App'x at 30 n.5. *See also Everett v. Astrue*, No. 1:10-CV-1831 LJO-BAM, 2012 WL 1965958, at *14 (E.D. Cal. May 31, 2012) ("[A]nalysis of Ninth Circuit social security case law reveals that the definitions of frequent and repetitive in the social security context are distinct.").

[70] A.R. 28.

than prohibit, the amount of repetitive bilateral handling, fingering, and feeling that Plaintiff can be required to perform in a given workday. Put another way, assuming an eight-hour workday, the RFC would preclude Plaintiff from occupying a hypothetical job that typically required her to perform repetitive bilateral handling, fingering, and feeling more than two hours and 40 minutes in a given workday, but might allow a job that only required an hour of such manipulations.

## C.    Lack of Substantial Evidence

### (1)    An ALJ's duty to develop the record

In making findings regarding a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[71] An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[72] An ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[73] This duty includes a responsibility to "study[] the record and resolv[e] any conflicts or ambiguities in it."[74] It exists "even when the claimant is represented by

---

[71] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). *See also* 20 C.F.R. §§ 404.1520(e), 404.1545(e), 416.920(e), 416.945(e).

[72] *Bradley v. Colvin*, No. 2:15-CV-1026-EFB, 2016 WL 5395956, at *3 (E.D. Cal. Sept. 26, 2016) (quoting SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).

[73] *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996), (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014).

[74] *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).

counsel."[75]  The existence of ambiguous evidence or a finding that the record is inadequate to allow for proper evaluation triggers an ALJ's duty to "develop the record further"[76] and "conduct an appropriate inquiry."[77]

For the reasons explained below, this Court concludes that the ALJ erred by failing to adequately account for the ME's testimony regarding Plaintiff's visual and typing limitations in the RFC and failing to explain omission of the ME's recommendations regarding Plaintiff's visual and typing limitations in the RFC.

### (a)    Visual limitations

Plaintiff contends that the ALJ failed to adequately account for the ME's testimony regarding Plaintiff's visual limitations in the RFC assessment "in violation of SSR 96-8p [and] 20 CFR § 404.1545."[78]  The Court agrees.

### (i)    The ME's testimony regarding plaintiff's visual limitations

The ME testified that Plaintiff's medical records reflected treatment for "moderate non-prolific diabetic retinopathy, hypertensive retinopathy and branch retinal vein occlusion in the right eye with macular edema."[79]  The ME noted "some visual field deficits . . . [and h]er visual acuity with correction was fair in 2016," but also noted that he had not seen "any recent records" relating to Plaintiff's visual acuity.[80]  He further testified

---

[75] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).
[76] *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).
[77] *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288).
[78] Docket 24 at 3.
[79] A.R. 55.
[80] *Id.*

that Plaintiff had "mild-to-moderate visual limitation," though he did not believe such limitations "would be a major problem unless the job called for some critical visual skills."[81] The ALJ subsequently asked the ME whether Plaintiff's visual limitations would allow her to engage in an occupation that required "frequent use such as near acuity like . . . jewelry making or being a brain surgeon or a lab tech or something like that?"[82] Responding to that prompt, the ME expressed his belief "that for many activities, she would be fine," but that an occupation "that required very close focusing and clear vision . . . would not be appropriate for her."[83] In response to a follow-up question by the ALJ regarding Plaintiff's ability to "look at a document, either on the computer or on paper," the ME clarified that he believed "[t]hat would be ok."[84] The ALJ asked no further questions, and the ME provided no further testimony, regarding Plaintiff's visual limitations.

### (ii) Absence of reference to all visual limitations in the RFC was legal error

SSR 96-8p provides that an "RFC assessment must always consider and address medical source opinions . . . [and, i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[85] Despite the ME's extended testimony regarding Plaintiff's visual limitations, the only reference to such limitations in the ALJ's findings was a statement that the ME had testified

---

[81] A.R. 59.
[82] A.R. 59–60.
[83] A.R. 60.
[84] Id.
[85] SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

that Plaintiff "has some visual limitations."[86]  The RFC, in turn, limited Plaintiff to "occupations that require only frequent near acuity."[87]  The ALJ made no reference to the fact that the ME's acceptance of Plaintiff's ability to engage in employment requiring frequent near acuity was qualified by the additional limitation of being unsuited for employment requiring "very close focusing and clear vision."[88]  There similarly was no reference to the ME's testimony that Plaintiff would have a problem with jobs requiring "critical visual skills."[89]

While *very close focusing* and *clear vision* are not defined terms within the social security context, the ME's testimony makes clear that he used the terms to describe visual limitations not encompassed by a simple "frequent near acuity" limitation.  By failing to include the ME's additional prohibition against occupations requiring *very close focusing* and *clear vision*, the RFC thus "conflict[ed] with an opinion from a medical source."[90]  Yet, the ALJ provided no explanation for failing to adopt the ME's opinion and did not even acknowledge that the RFC conflicted with the ME's testimony.  In so doing, the ALJ violated SSR 96-8p.[91]  To extent that the ME's usage of terms *close focusing, clear vision,* and *critical visual skills*, which are terms lacking standard definitions within

---

[86] A.R. 32.  This statement is made at the conclusion of a paragraph in which the ALJ purports to summarize the ME's testimony regarding Plaintiff's limitations.  The vagueness of the statement strikes a stark contrast with the specificity of the rest of the paragraph.
[87] A.R. 28.
[88] A.R. 60.
[89] A.R. 59.
[90] SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).
[91] While SSRs do not have the precedential value of caselaw, they are "binding on all components of the Social Security Administration . . . [and] represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration has] adopted."  20 C.F.R. § 402.35(b).

the social security context, created an ambiguity in the record, the ALJ additionally erred in failing develop the record by making appropriate inquiries to resolve those ambiguities.

**(b) Typing limitation**

**(i) The ME's testimony regarding plaintiff's typing limitations**

When asked by Plaintiff's attorney about Plaintiff's ability to perform a job that "required [her] to use a keyboard throughout the day," the ME testified that he believed "occasional [typing] would be ok," with the proviso that she should not "be using the keyboard . . . more than . . . a third of the [work]day."[92] When asked by the ALJ to repeat himself, the ME responded that he thought "it would be okay for her to have occasional, you know, up to a third of the day using a keyboard intermittently. But [he did not] think that she should be using a keyboard all day long because both of her peripheral neuropathy and the carpal tunnel syndrome."[93]

**(ii) Absence of reference to typing limitations in the RFC was legal error**

Despite the ME's testimony that Plaintiff's peripheral neuropathy and the carpal tunnel limited her to occupations that required only occasional[94] and intermittent typing, there is no reference to that testimony, in the ALJ's findings, or to typing limitations, in the RFC. There is, additionally, no reference to typing limitations in the hypotheticals the ALJ posed to the VE. By failing to include ME-specified typing limits

---

[92] A.R. 61.

[93] *Id.*

[94] The ME's definition of "occasionally" as up to a third of the workday is consistent with that included in SSR 83-10. *See* SSR 83-10, 1983 WL 31251, at *5 (January 1, 1983).

in the RFC or provide a reason for that omission, the ALJ thus violated SSR 96-8p's requirement that an "RFC assessment must always consider and address medical source opinions . . . [and, i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[95]

### (c) The RFC is not supported by substantial evidence

"Substantial evidence" has been defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[96]  Considering the nature of Plaintiff's past relevant work as an administrative assistant, both under the DOT and as commonly understood, the ALJ's failure to include limitations—articulated by an ME whose testimony the ALJ found persuasive[97]—with respect to vision and typing in the RFC, and failure  to provide any explanation for those omissions, renders the RFC unsupported by substantial evidence.  It follows, therefore, that VE testimony based on a flawed RFC cannot constitute substantial evidence to support the ALJ's findings.[98]  The ALJ's step four conclusion that Plaintiff is "capable of performing past relevant work as an administrative assistant" is, accordingly, not based upon substantial evidence, in that it relied upon the VE's testimony.

---

[95]  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).

[96]  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[97]  A.R. 32 ("The undersigned finds the opinion of Dr. Kidder persuasive.").

[98]  *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (When "neither the hypothetical nor the answer properly set forth all of [a claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

**D.     Alleged Conflict Between the VE's Testimony and the DOT**

As the Ninth Circuit has explained, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."[99]  An ALJ confronted with such an apparent conflict must "ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination."[100] An ALJ's failure to resolve an apparent conflict, in turn, "may leave [a reviewing court] with a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence."[101]  To be considered an "apparent conflict," the VE's testimony typically must "be at odds with the DOT's listing of job requirements that are essential, integral, or expected."[102]

The Ninth Circuit cautions, however, against assuming that every task contained within a DOT occupational description represents an "essential, integral, or

---

[99]  *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).  *See also* SSR 00-4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.").

[100]  *Zavalin*, 778 F.3d at 846 (internal citation omitted).

[101]  *Id.*

[102]  *See I.R. v. Saul*, No. 3:19-CV-05934-JCS, 2021 WL 1056633, at *9 (N.D. Cal. Mar. 19, 2021) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)).

expected requirement."[103]  After all, the DOT "refers to 'occupations,' not to specific jobs . . . [and] '[o]ccupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'"[104]  Consequently, "not all potential conflicts between an expert's job suitability recommendation and the Dictionary's listing of 'maximum requirements' for an occupation will be apparent or obvious."[105]

Because this Court is remanding for further proceedings due to an RFC that is not supported by substantial evidence, the Court need not address Plaintiff's arguments that there were apparent conflicts between the DOT administrative assistant job description requirements and both the VE's and ME's testimonies; or that the ALJ failed to resolve those conflicts.[106]  Upon remand, Plaintiff and her attorney will have the opportunity to question the experts regarding such discrepancies, if the ALJ does not adequately do so in the first instance.

## VI.  FINDINGS AND INSTRUCTIONS ON REMAND

Plaintiff requests that the Court vacate the ALJ's decision and remand the case back to the Commissioner under 42 U.S.C. § 405(g) with instructions to reevaluate the finding at step four of the sequential process.[107]  The Supreme Court's "ordinary

---

[103]  *Gutierrez*, 844 F.3d at 807–08.
[104]  *Id.* at 807 (quoting SSR 00-4P, 2000 WL 1898704, at *2–3 (S.S.A. Dec. 4, 2000).
[105]  *Id.* at 807–08.
[106]  Docket 19 at 13–15.
[107]  Docket 19 at 11.  Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

remand rule" applies in this case.[108]  Under this rule, if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[109]  Here, as explained above, the ALJ erred by assessing an RFC that did not adequately account for Plaintiff's visual and manipulative limitations.  Because the ALJ's step four conclusion that Plaintiff was able to meet the requirements of her past relevant work was based upon that flawed RFC, that conclusion was not based upon substantial evidence.  As a result, there are outstanding issues that need to be resolved before a disability determination can be made.  Remand, accordingly, is necessary.

The Court reverses and remands this matter to the ALJ with instructions to:

1.    Comply with HALLEX I-2-6-70(b) by allowing Plaintiff to testify prior to the ME and "[i]f the ME [is] not present to hear pertinent testimony . . . summariz[ing] the testimony for the ME on the record[;]"[110]

2.    Obtain additional testimony from an ME to clarify the nature and extent of Plaintiff's limitations from her impairments and resolve any ambiguities of language;

3.    Formulate an accurate RFC that reflects all of Plaintiff's limitations, including vision and typing limitations;

---

[108]  *Treichler*, 775 F.3d at 1099 ("The ordinary remand rule applies equally to Social Security cases").  *See Gonzales v. Thomas*, 547 U.S. 183, 185 (2006).

[109]  *Treichler*, 775 F.3d at 1099 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[110]  Pertinent testimony would include, but not be limited to, testimony regarding Plaintiff's difficulties grasping, holding, and turning things.

4. Obtain new testimony from a VE;

5. Revisit step four of the sequential analysis, based upon the accurate RFC and new VE testimony;

6. Include in the decision "a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms* and the adjudicator's personal observations, if appropriate;[111] and

7. Conduct step five of the sequential analysis, for the purpose of making alternative findings, if Plaintiff is determined at step four to be capable of performing her past relevant work as an administrative assistant, as generally performed, rather than as actually performed.

## VII.   CONCLUSION

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's request for relief at Docket 19 is **GRANTED**; the Commissioner's final decision is **VACATED**, and this matter is **REMANDED** for further proceedings, consistent with this Order.

IT IS SO ORDERED this 28th day of March, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE

---

[111] *See Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) ("In other words, the ALJ must take 'the claimant's subjective experiences of pain' into account when determining the RFC.").